UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GLORIA TREVINO<br><br>Plaintiff,<br><br>v.<br><br><br><br>IDENTITY ARCHITECTS, INC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.4:20-CV-00385 |

**DEFENDANT'S MOTION TO COMPEL THE MENTAL EXAMINATION OF PLAINTIFF, GLORIA TREVINO**

COMES NOW defendant Identity Architects, Inc. ("Identity Architects"), and asks the Court to Order Plaintiff Gloria Trevino to submit to a mental examination as allowed by Federal Rule of Civil Procedure 35, and in support hereof, Identity Architects respectfully shows the following:

**I. INTRODUCTION**

1. Plaintiff sued Defendants for discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964.

2. Based on Ms. Trevino testimony and facts that came to light during Ms. Trevino's deposition, Identity Architects believe it is necessary for Ms. Trevino to undergo mental examination and for a determination to be made concerning her capacity to testify in this matter.

1

## II. RELEVANT FACTS

3.      Plaintiff filed suit against defendant on or about January 28, 2020, alleging sexual harassment and discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, following issuance of a Dismissal and Notice of Rights letter issued from the U.S. Equal Employment Opportunity Commission on September 26, 2019.[1]

4.      Plaintiff's complaint alleges an assortment of actions by Identity Architect's employees based on perceived acts of hostility and/or harassment, such as "staring at [Plaintiff] with an intimidating stare." *See* [Doc. 1 at 7].

5.      During Ms. Trevino's deposition of June 15, 2021, Ms. Trevino made several statements that directly call into question her capacity to offer testimony in this matter, including but not limited to her statement that she has been diagnosed with and is receiving ongoing treatment for schizophreniform. The following is a non-exhaustive sampling of statements made during Ms. Trevino's deposition:

```
4  Q.  -- the psychologist there diagnosed you with
5  schizoform?
6  A.  Correct.
```

*See* Exhibit A, Excerpts from Deposition of Gloria Trevino, p. 135, lines 4-6.

```
13  A.  Yes, where I called and said that Keenon Rayner
14  shot himself.  You're going to ask me why?  I'm a
15  disgruntled employee.  I'm upset.  Why do you stare at
16  me and wrongfully terminate me?
17  Q.  I just want to make sure I understand what you
18  just said.
19  A.  This is the only thing that I ever did to them,
20  and everything that they did to me.  That's right.  I
21  called.  I falsely called.  I have schizophreniform.  I
22  have racing thoughts, and I have everything that you
23  guys done to me.  And this is what -- you're going to
```

---

[1] In its Dismissal and Notice of Rights letter the EEOC informed Ms. Trevino that, following an investigation, her charge/claims against Identity Architects were dismissed. *See* [Doc. 1-1].

2

>      24  make it seem like it's the worst thing in the world?  I
>      25  made a false report against Keenon Rayner.  I did it.

*Id.* p. 140, lines 13-25 (emphasis added).

>      25  A.   I'm being tortured with mind communication. It
>      1   was invented in 2006. I started hearing voices after I
>      2   reported it to the EEOC. So, that's what he's referring
>      3   to; and that's why I had got diagnosed schizophrenia
>      4   form. Mind communication was invented in 2006. The
>      5   Army has brain user interface. I'm being tortured with
>      6   it to this day.
>      7   Q.  Who's -- who's torturing you?
>      8   A.  I don't know. I'm not -- I'm not the person
>      9   who's torturing me.
>      10  Q.  But somebody is using mind communication
>      11  towards you?
>      12  A.  Yes, to torture me. And he said he was Keenon
>      13  Rayner. So, that's why I started texting him.
>      14  Q.  Who said he was Keenon Rayner?
>      15  A.  The mind communication guy who talks to me
>      16  24/7. It's not schizophrenia. It's mind communication.
>      17  Q.  How does he talk to you?
>      18  A.  He talks to me with mind communication.
>      19  It's -- he's on a computer. There's a separate case.

*Id.* p. 141 line 25 – p. 142, lines 1-19.

>      11  Q.  One thing that you said about the mind
>      12  communication is that he, whoever is doing mind
>      13  communication, told you that he was Keenon Rayner?
>      14  A.  Correct.
>      15  Q.  How --
>      16  A.  That's why I sent him text messages.
>      17  Q.  How were you told? Was it in an e-mail? Was
>      18  it in a text?
>      19  A.  No, via mind communication. He can -- he can
>      20  listen to me right now. Look at brain user interface
>      21  with the Army. They have soldiers communicating with
>      22  each other on mind communication when they're hooked up
>      23  to a computer. They're not actually hooked up. Someone
>      24  is, but them two are not.
>      25  Q.  Okay. I'm not familiar with the technology.
>      1   So, I just want to make sure I understand what you're
>      2   saying.
>      3   A.  Right.

```
 4  Q.  So, you're saying that somebody at a computer
 5  is communicating directly into your head --
 6  A.  Correct.
 7  Q.  -- and that person told you, in your head, that
 8  they were Keenon Rayner?
 9  A.  Correct.
```

*Id.* p. 144, lines 11-25 – p. 145, lines 1- 9.

```
10  Q.  Are you still having issues with mind
11  communication?
12  A.  Every day, 24/7.  It makes me sleep deprived
13  along with the racing thoughts.
14  Q.  Are you currently seeing a therapist --
15  A.  Yes.
16  Q.  -- or a psychologist?
17  A.  Yes.
18  Q.  How often do you see them?
19  A.  I get a phone call from them probably once a
20  week, and then I see them once a month.
21  Q.  Are you on any sort of monitored program?
22  A.  What do you mean "monitored program"?
23  Q.  In relation to your stay in the psych ward, is
24  the therapy that you are getting --
25  A.  Yes.  Yes, it's monitored.  I mean, it's as
 1  best as you can. It's with Harris Health System. I get
 2  the psych care I get.
```

*Id.* p. 149, lines 10-25 – p. 150, lines 1-2.

### III. **ARGUMENT AND AUTHORITIES**

6. The Court may issue an Order for examination if there is good cause and the party's mental condition is in controversy. Fed. R. Civ. P. 35. "Good cause" exists when (1) the examination is relevant to issues in the case and the examination will produce, or is likely to lead to, relevant evidence; (2) there is a reasonable nexus between the condition of the person to be examined and the examination sought; and (3) it is impossible to obtain the desired information through means that are less intrusive than a compelled examination. *See, e.g., Sclagenhauf v.*

4

*Holder*, 379 U.S. 104 (1964); *see also In re HEB Grocery Company*, 492 S.W3d 300, 303 (Tex. 2016); *Coates v Whittington*, 758 S.W.2d 749, 753 (Tex. 1988).

A. Good Cause

7. Good cause exists to order the mental examination of Plaintiff in this case because Plaintiff, by her own omission, has been diagnosed with schizophreniform and is receiving ongoing treatment for same. The question of Plaintiff's capacity to sue is therefore directly at issue. Fed. R. Civ. P. 17(c). Moreover, to the extent an examination determines Plaintiff is competent to file suit, there may still be legitimate questions as to Plaintiff's credibility and capacity to testify as a reliable fact witness in this case. Fed. R. Evid. 601.

B. Relevant

8. Plaintiff's mental stability, as the sole witness in Plaintiff's case, is relevant in determining Plaintiff's standing, credibility as a witness, and her capacity to testify. Fed. R. Civ. P. 17(c); Fed. R. Evid. 601.

C. Reasonable Connection

9. Plaintiff's claims are solely rooted in perceived interactions with the employees at Identity Architects. The revelations in Plaintiff's deposition indicate there may be a question as to whether those interactions took place and whether Plaintiff can reliably speak to the truth of the matter. Fed. R. Evid. 601.

D. No Less Intrusive Means

10. It is not possible for Identity Architects to obtain the information that would result from a mental examination through less intrusive means. Plaintiff's mental condition cannot be determined by deposition alone. It is necessary for a neuropsychological expert to obtain the information sought, and the only way to do so is through mental examination and testing.

E.      Mental Condition in Controversy

11.      Plaintiff's own testimony at her deposition brings into controversy her capacity to sue and her ability and reliability to testify. Presumably, Plaintiff will not concede that she is unable to testify. Therefore a determination as to her mental capacity and ability to do so is required.

## IV. DESIGNATED PHYSICIAN

12.      Defendant designates Dr. Edward Casanova, MD to conduct the mental examination of Plaintiff. Dr. Casanova previously treated and diagnosed Plaintiff. Dr. Casanova practices with Harris County Mental Health & Mental Retardation Authority, 3737 Dacoma St, Houston, TX, 77092. The scope of Dr. Casanova's examination should be limited to a determination that Plaintiff currently suffers from schizophreniform, and a determination as to her ability to reliably recall facts and truthfully testify concerning her allegations against Identity Architects.

## V. CONCLUSION AND PRAYER

There is good cause for the mental examination of Plaintiff Gloria Trevino. Plaintiff's mental condition is clearly in controversy. Therefore, Identity Architects seek an Order from the Court requiring Plaintiff Gloria Trevino to undergo a mental examination.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully prays this Court to enter an Order compelling Plaintiff Gloria Trevino to be examined by Dr. Edward Casanova at a mutually agreeable date and time. Defendants seeks such other and further relief to which it may justly be entitled.

        Respectfully Submitted,

        Hanszen ▪ Laporte, LLP

        */s/ Matthew S.C. Hansel*
        Anthony L. Laporte
        Texas Bar No. 00787876
        Attorney in Charge
        alaporte@hanszenlaporte.com
        Matthew S.C. Hansel
        Texas Bar No. 24092480
        mhansel@hanszenlaporte.com
        14201 Memorial Drive
        Houston, Texas 77079
        Telephone: (713) 522-9444
        Facsimile: (713) 524-2580
        ***Attorneys for Defendant***

## **CERTIFICATE OF CONFERENCE**

On August 18, 2021, and August 19, 2021 the undersigned counsel made multiple attempts to confer with Gloria Trevino regarding her opposition to the foregoing motion to compel mental examination. Despite these efforts, counsel was unable to reach Ms. Trevino and has not received a call back or response email. Accordingly, Defendant presumes Ms. Trevino is opposed to the motion.

        *Matthew S.C. Hansel*
        Matthew S.C. Hansel

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on August 20, 2021, a true and correct copy of the foregoing instrument has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure, to wit:

Gloria Trevino
gloria.trevino777@yahoo.com
6001 Kiam St.
Houston, Texas 77007
Telephone: 832-935-1651
***Pro Se***

                                                  */s/ Matthew S.C. Hansel*
                                                  Matthew S.C. Hansel